**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**


| | | |
|---|---|---|
| **SCOTTIE BAGI, et al.,** | ) | **CASE NO.  1:14 CV 558** |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **JUDGE DONALD C. NUGENT** |
| | ) | |
| **CITY OF PARMA,** | ) | |
| | ) | |
| **Defendant.** | ) | **MEMORANDUM OPINION** |


This matter is before the Court on the Motion for Summary Judgment filed by Defendant,

City of Parma ("the City").  (Docket #54.)   In their sole remaining claim, Plaintiffs, City of

Parma Firefighters Scottie A. Bagi and Gary C. Vojtush, allege they were retaliated against by

the City for exercising their right to free speech in violation of the First Amendment.

**I.      Summary of Facts.**[1]

Plaintiffs are employees of the City of Parma Fire Department.  Firefighter Bagi has

worked for the City of Parma Fire Department as a Firefighter/Paramedic since May 1999.

(Complaint at Paragraph 2.)  Plaintiff, Gary Vojtush, has worked for the City of Parma Fire

---

[1]      The facts as stated in this Memorandum Opinion and Order are taken from the
Parties' submissions.  Those material facts that are controverted and supported by
deposition testimony, affidavit, or other evidence are stated in the light most favorable to
the non-moving Party.

Department as a Firefighter/Paramedic since September 1995.  (Complaint at Paragraph 3.)

Plaintiffs' First Amendment claim stems from a letter written by Firefighter Bagi, and signed by

Firefighters Bagi and Vojtush, which included allegations that testing for a specialized unit of

the City of Parma Fire Department was biased and/or rigged so that certain Firefighters would be

selected.

> **A.     2004 TEMS Test.**

In 2004, the Parma Fire Department, under the leadership of Captain Peter Poznako,

developed and administered a test for membership on a Tactical Emergency Medical Service

Team (the "TEMS Unit").  (Deposition of John French ("French Depo.") at pp. 38-40.)  The

TEMS Unit is a specialized team of select Firefighter/Paramedics from the Fire Department who

provide direct support to the City of Parma Police Department SWAT Unit.  (Deposition of Scott

Bagi ("Bagi Depo.") at p. 51; Deposition of Dennis Ryan ("Ryan Depo.") at p. 35; Deposition of

Michael Whelan ("Whelan Depo.") at pp. 38-39 .)  Members of the TEMS Unit are armed, wear

tactical gear and respond to incidents with SWAT members.  (French Depo. at pp. 32-33;

Whelan Depo. at pp. 38-40.)  The primary purpose of the TEMS Unit is to provide medical

treatment to SWAT members who become injured at a crime scene.  (Id.; Deposition of Peter

Poznako ("Poznako Depo.") at pp. 32-33.)  If SWAT members do not need assistance, members

of the TEMS Unit may provide medical care to others on the scene until another emergency

medical unit arrives.

Choosing members for the TEMS Unit was within the Fire Chief's discretion, subject to

the SWAT Commander's approval and membership was not subject to civil service examination.

(Bagi Depo. at pp. 44 and 53; French Depo. at pp. 43-44; Whelan Depo. at pp. 39-41.)

Nevertheless, Fire Department Chief John French appointed Fire Department Captain Peter

Poznako to develop and coordinate a test for the 2004 TEMS Unit (the "TEMS Test").  (French Depo. at pp. 36, 39 and 41.)  The 2004 TEMS Test consisted of five components, including a 100-question, multiple choice, written assessment.  Candidates were required to score at least 80% on the written assessment to move forward with the other four components of the test. (French Depo. at p. 40; Whelan Depo. at pp. 8-11 and 27.)

On February 13, 2004, Captain Poznako sent an email to all Parma Firefighters, informing them that the TEMS Test would be administered and that a minium of two years of service was required for eligibility.  (Email dated February 13, 2004, Exhibit F to Defendant's Motion for Summary Judgment; Bagi Depo. at pp. 232-33; Whelan Depo. at p. 8.)  On May 25, 2004, an informational meeting was held for interested Firefighters, during which the different components of the test were discussed and a list of study materials was provided.  (Email dated May 20, 2004 and Memo dated June 4, 2004, Exhibits G and H to Defendant's Motion for Summary Judgment; Bagi Depo. at pp. 55-56.)

Firefighter Bagi testified he had a conversation with Captain Poznako before the 2004 TEMS Test, during which he alleges Captain Poznako told him that he was directed by the Parma Police Department that if Firefighter Mlady was not selected that there would not be a TEMS Unit from the Fire Department.  (Bagi Depo. at pp. 66-67 and 192; Bagi Declaration at Paragraph 3.)  Plaintiffs state that "Tony Mlady was drinking buddies with members of the Parma Police Department" and "that the TEMS Unit was seen by some Firefighters as a "'good old boys club.'"  (Opposition Brief at pp. 6-7 at Footnote 3, citing Bagi Depo. at pp. 67 and 73-74; Deposition of Tom Kolar ("Kolar Depo.") at p. 8; and, Poznako Depo. at p. 107.)  Firefighter Bagi believed Captain Poznako was biased in favor of others and against him, noting that at some point prior to the TEMS Unit test, Captain Poznako had yelled at him for wearing shower

-3-

shoes in the firehouse and for parking his car in a certain area. (Bagi Depo. at pp. 75-76 and 103-05.)

On June 4, 2004, six Parma Firefighters took the written portion (multiple choice) of the TEMS test – Firefighter Bagi and Firefighters Mike Whelan, Tony Mlady, Tony DeCarlo, Mark Bazemore and Jeff Patterson. Firefighter Bagi approached Captain Poznako immediately following the written test and commented that someone other than Captain Poznako should grade the test. Firefighter Bagi testified that Captain Poznako became angry, got in his face and screamed at him. (Bagi Depo. at pp. 75-76, 103-05 and 381.)

As stated above, Firefighters were required to score at least 80% on the written portion of the TEMS Test to move forward with the other four components of the Test. Firefighter Bagi scored a 55% on the written portion of the test – below the 80% threshold required to move forward. (Emails dated June 6, 2004 and December 6, 2010, Exhibit L to Defendant's Motion for Summary Judgment; Bagi Depo. at pp. 57-58.) Three other Firefighters – Mlady, DeCarlo and Patterson – also scored below an 80%. According to the City, because all six Firefighters who took the 2004 TEMS Test missed several of the same questions, Captain Poznako requested that City of Parma Firefighter Al Gatka, a Cuyahoga Community College Course Instructor and Union Officer, review the questions and answers, which resulted in credit being given for several questions when more than one answer was arguably correct. (Affidavit of Captain Peter Poznako ("Poznako Affidavit"), Exhibit J to Defendant's Motion for Summary Judgment; Whelan Depo. at pp. 30-31.) As a result, Firefighter Bagi received 8 additional points, raising his score on the written test from 55% to 63%, still below passing. (Exhibit L to Defendant's Motion for Summary Judgment; Bagi Depo. at p. 62.) The other 5 Firefighters each received

-4-

between 4 and 8 additional points.[2]  In the end, Firefighters Whelan, Mlady, DeCarlo and Bazemore received passing grades on the written portion of the TEMS Test and were later appointed to the TEMS Unit.  (Bagi Depo. at pp. 65-69.)

Firefighter Bagi never reviewed his 2004 TEMS Test and stated during deposition that he has no knowledge how the test was graded.  (Bagi Depo. at pp. 58 and 64.)[3]  He testified that he asked Captain Poznako to see how the other Firefighters had scored but that Captain Poznako refused.  (Bagi Depo. at p. 63.)  Firefighter Bagi believed Captain Poznako was biased in favor of the four Firefighters who received passing grades and biased against Firefighter Bagi.  (Bagi Depo. at pp. 65-69.)  Firefighter Bagi believes the test was "curved" – that certain questions were purposefully eliminated – so that the Firefighters Captain Poznako liked would pass. (Letter dated July 29, 2011 and Email dated December 6, 2010, Exhibits A and N to Defendant's Motion for Summary Judgment; Bagi Depo. at pp. 60-62, 65-69, 184-85 and 530-31.)[4]

In addition to complaining to Captain Poznako immediately following the 2004 TEMS test, Firefighter Bagi had conversations with Union President Nick Kashi in 2004; subsequent

---

[2]  Firefighter Bazemore – 7 extra points; Firefighter DeCarlo – 8 extra points; Firefighter Mlady – 8 extra points;  Firefighter Patterson – 5 extra points; and, Firefighter Whelan – 4 extra points.  (Whelan Depo. at pp. 35-36.)

[3]  An email dated June 6, 2014 from Captain Poznako to Firefighter Bagi reads, "Scott, Your final score on your written exam was 63%.  This falls below the minimum required to advance to the interview portion of Tactical Medic qualification.  You may make an appointment to review your exam and I will have a textbook and the key at your disposal on site."  (Exhibit L to Defendant's Motion for Summary Judgment.)

[4]  Firefighter Bagi testified that he later told Firefighter Gatka that he had issues with the curve and testified that "Gatka told him to 'just let it go' and stated 'the guy doesn't want you on the team.'" (Bagi Depo. at p. 61.)

Union President Dave Light in 2006; Chief French in 2007; and, current Union President Pat Lovejoy in 2010, regarding what he believed to be bias in grading the 2004 TEMS test.  (Exhibit L to Defendant's Motion for Summary Judgment; Bagi Depo. at pp. 69-71 and 77-88; Deposition of Patrick Lovejoy ("Lovejoy Depo.") at pp. 41-42 and 168-72.)  Firefighter Bagi did not put his concerns in writing and believes his complaints were investigated.  (Id.)  None of his complaints were ever substantiated.  (Id.)  Firefighter Bagi was never disciplined for raising these issues within the Fire Department or with the Union.  (Id.)

  **B.**  **2011 TEMS Test.**

  In late 2010, Firefighter DeCarlo left the TEMS Unit.  On December 6, 2010, Firefighter Bagi emailed Captain Poznako and expressed an interest in replacing Firefighter DeCarlo on the TEMS Unit, asserting that because he took the 2004 test, he should be next in line.  (Exhibit N to Defendant's Motion for Summary Judgment; Bagi Depo. at pp. 533-34.)  Captain Poznako informed Firefighter Bagi that the open position would not be filled at that time; that future appointments to the TEMS Unit would be made by competitive examination; and, noted that Firefighter Bagi and Firefighter Patterson both failed the 2004 written exam and, therefore, neither would be ineligible regardless.  (Exhibit N to Defendant's Motion for Summary Judgment.)  In response, Firefighter Bagi wrote as follows:

> I truly respect the Chiefs decision to only have 4 members on the team.  However, if I remember correctly FF Decarlo and FF Mlady also failed but you throw [sic] out handpicked questions creating a curve in the grading scale ultimately giving them a passing score.  I presumed that I would also be extended the same courteously [sic] ?

(Id.)  Firefighter Bagi believed testing for new members for the TEMS Unit was purposefully being stalled so that Firefighter Ricky Fetter would be eligible to take the TEMS Test.  (Bagi

Depo. at pp. 140-41.)[5]

In 2011, the Fire Department began the process of selecting new members for the TEMS Unit. Chief French assigned the duties of supervising and administering the 2011 TEMS Test to Captain Poznako. (French Depo. at p. 71.) At Captain Poznako's request, Firefighter Michael Whelan designed the 2011 TEMS examination. (Whelan Depo. at p. 41.) Like the 2004 TEMS Test, the 2011 TEMS Test was not a civil service test, and would be administered internally. (Poznako Depo. at pp. 69 and 107; Ryan Depo. at p. 44.)

Captain Poznako took no part in the creation of the 2011 exam and had no knowledge of the questions on the written test prior to the TEMS Test date. (Whelan Depo. at pp. 55 and 136.) Firefighter Whelan had total control over the textbook; selection of test questions; and, the answer key. (French Depo. at pp. 41-42; Whelan Depo. at pp. 47-57.) Firefighter Whelan chose a standardized test from a new book that had not yet been published so that no candidate had an advantage. (Whelan Depo. at pp. 41-42; 48-51; 54-55; and, 136.)[6]

---

[5]

Firefighter Bagi asserts that he believed 5 years of service were needed for eligibility and that Firefighter Fetter did not meet the requirement. (Opposition Brief at p. 8, citing Bagi Depo. at pp. 140-41 and 177 and Bagi Declaration at Paragraph 3.) In fact, 3 years of service, not 5, were required to qualify for the 2011 TEMS Test. As discussed in more detail below, an email was sent to all Firefighters indicating 3 years of service were required for eligibility. The requirement was an increase from the 2-year service requirement for the 2004 TEMS Test.

[6]

Firefighter Whelan testified that he specifically sought out and chose a new text book to make the process fair. (Whelan Depo. at pp. 49-50.) Firefighter Whelan testified, "I specifically made the test from a text that nobody would have any preference or any prior knowledge to, cost me money out of my own pocket and also out of my own time, which I spent quite a long time on to make this test, and then to oversee this test to make sure it was fair.

"Specifically, because I did know that there was one person who had advanced knowledge of paramedicine and other medical subjects because he was an instructor, I

On June 6, 2011, Captain Poznako sent an email to all Parma Firefighters, informing them that a competitive exam would be held for an appointment to the TEMS Unit.  The email stated, "Applicants must have at least three years on the Parma Fire Department and be a functioning Paramedic."  (Email dated June 6, 2011, Exhibit P to Defendant's Motion for Summary Judgment.)  The years of service requirement was increased from two years for the 2004 TEMS Test to three years for the 2011 TEMS Test to match the revised standard for SWAT Team members established by the Police Department.  (Whelan Depo. at pp. 56-60.)  Although deposition testimony reflects several Firefighters were individually uncertain whether the years of service requirements were increased or decreased and how many years of service were required, any uncertainty was the result of general workplace gossip.  None of the Firefighters sought clarification, although had they done so, the information would have been readily available.

Within two hours of receiving Captain Poznako's email, Firefighter Bagi responded to Captain Poznako and stated "put me in" for the exam.  (Exhibit P to Defendant's Motion for Summary Judgment.)  Six other Parma Firefighters also expressed an interest in taking the test.  On June 27, 2011, Captain Poznako informed all those interested, including Firefighter Bagi, that an informational meeting would be held on July 6, 2011 to discuss the test, distribute study materials and answer questions regarding the testing procedure.  (Email dated June 27, 2011, Exhibit Q to Defendant's Motion for Summary Judgment.)

All of the Firefighters who had expressed an interest in taking the TEMS Test attended the July 6, 2011 meeting, with the exception of Firefighter Bagi.  (Bagi Depo. at p. 114; Whelan

---

specifically went out of my way in order to make sure that the test was fair for all involved."  (Whelan Depo. at p. 85.)

Depo. at p. 52.)  Captain Poznako ran the meeting and Firefighters Whelan and Bazemore were introduced as the individuals administering the test.  (Whelan Depo. at p. 52.)  They explained the details of the exam and how it would be scored; provided each candidate with a CD ROM of the power point slides that were presented; and, provided those in attendance with the name of the textbook used by Firefighter Whelan to develop the TEMS Test.  (Id.)  The test included a multiple choice, written component; a physical fitness component; a trauma assessment; a review of run reports; and, an oral interview.  (Whelan Depo. at p. 43.)  Firefighter Whelan coordinated the overall exam and was not aware of any candidates receiving additional information regarding the test, other than what was provided at the informational meeting.  (Whelan Depo. at pp. 54 and 62-63.)

Firefighter Bagi emailed Captain Poznako the day after the meeting asking, "Let me know any info. that I will need to know for SWAT Team."  (Email dated July 7, 2011, Exhibit S to Defendant's Motion for Summary Judgment.)  Captain Poznako responded the next day, July 8, 2011, with information about the test and the necessary study materials and set aside an information packet for Firefighter Bagi to pick up.  (Email dated July 8, 2011, Exhibit T to Defendant's Motion for Summary Judgment; Bagi Depo. at p. 119.)  Firefighter Bagi never picked up the information packet set aside by Captain Poznako.  (Bagi Depo. at pp. 120-21.)  On July 12, 2011, Firefighter Bagi sent Captain Poznako an email, asking who would create and grade the written portion of the test.  (Bagi Depo. at pp. 124-25.)  Bagi testified he wanted to make sure there wouldn't be bias in the selection process.  (Bagi Depo. at p. 126.)  He does not remember receiving a response from Captain Poznako.  (Id.)

On July 17, 2011, Firefighter Bagi asked Firefighter Ricky Fetter for a copy of his study materials.  Since Firefighter Fetter had ordered and studied the reference book and copied all of

-9-

the materials, he gave all of the testing materials to Firefighter Bagi.  (Bagi Depo. at pp. 121-124; (Deposition of Ricky Fetter ("Fetter Depo.") at pp. 48-52.)

The TEMS Test was administered on August 1, 2011.  Five Firefighters ultimately participated in the 2011 TEMS test – Ricky Fetter, Ron Iacoboni, Joseph Posa, Joseph Owens and Jeff Patterson.  Firefighter Bagi did not take test.  Firefighter Whelan performed the final grading of the written exams, including giving credit for more than one correct answer if necessary.  (Whelan at pp. 63-64.)  Firefighter Whelan also administered the physical fitness test in cooperation with the Parma Police SWAT Team.  (Whelan Depo. at p. 44.)  TEMS Unit Member Bazemore and City Medical Director Dr. Carl Shikowski developed and graded the Trauma Assessment Component of the TEMS test.  (Whelan Depo. at pp. 43 and 45-46.) Firefighter Mike Frantz graded the Document Assessment – like he had done for the 2004 TEMS Test – as he routinely reviewed run reports for the Fire Department.  (Whelan Depo. at pp. 43 and 66-67.)  Oral interviews were conducted and, although Captain Poznako and others were present, only Parma Police SWAT Team Supervisors graded the candidates.  (Whelan Depo. at pp. 44-45.) Captain Poznako took no part in creating or grading the examination.

All five Firefighters who took the written exam received a score of 80% or greater and passed the exam.  (Defendant's Motion for Summary Judgment at p.13 and Ex W, 2011 TEMS Test Results; Whelan Depo. at p. 71.)  Firefighters Fetter and Iacoboni had the two highest scores, with Fetter scoring the highest, and both were appointed to the TEMS Unit in October 2011.  (Id.)

Firefighter Fetter testified that aside from attending the informational meeting, he did not have any conversations with Captain Poznako about the 2011 TEMS Test; that Captain Poznako did not give him answers for the test; and, that Captain Poznako did not direct him to any

-10-

information to study for the test.  (Fetter Depo. at p. 54.)

       **C.**       **The July 20, 2011 Letter From Firefighter Bagi to Chief French.**

Firefighter Bagi testified during his deposition that sometime after Captain Poznako sent him the July 8, 2011 email with information regarding the TEMS Test, he decided not to participate in the examination.  (Bagi Depo. at p. 120.)  In their Brief in Opposition, Plaintiffs state that Firefighter Bagi "observed an issue with the integrity of the administration of" the 2011 TEMS Test and "was concerned with how this may affect the effectiveness of the Unit and overall safety to the City's Police and community."  (Opposition Brief at p. 2.)

Plaintiffs assert that they believed Firefighter Ricky Fetter would be selected for the TEMS Unit because he was friends with Captain Poznako.[7]  Further, Plaintiffs assert, "There was a concern because the Captain was seen by the Parma Firefighters to be controlling, a bully, very biased, manipulative, conniving, and vindictive."  (Opposition Brief at p. 6; Bagi Declaration at Paragraph 3; Kinney Depo. at pp. 13, 24-26 and 89.)[8]  Plaintiffs state that "Captain Poznako would berate others on the Department, and he had an explosive personality."  (Opposition Brief at p. 6, Kinney Depo. at pp. 28-29, Knecht Depo. at p. 47; Tibbetts Depo. at p. 35.)  Plaintiffs note the testimony of Union President Lovejoy, during which he indicated he could "understand

---

[7]

      While the deposition testimony of Firefighters Mike Kinney, Christopher Tibbetts and David Knecht, cited by Plaintiffs, relates that each believed generally that Captain Poznako was likely to select Firefighters he liked for the TEMS Unit, none of the three testified that Firefighter Fetter was certain to be chosen and all testified that Firefighter Fetter would likely be one of the top scorers regardless.  (Deposition of Mike Kinney ("Kinney Depo.") at pp. 13-14, 23, 30, 32, 43, 70, and 81; Deposition of David Knecht ("Knecht Depo.") at p. 54; Deposition of Christopher Tibbetts ("Tibbetts Depo.") at pp 46-50.)

[8]

      Firefighter Knecht's testified that while he had seen Captain Poznako angry, his knowledge of arguments or issues between Captain Poznako and other Firefighters was based on rumor.  (Knecht Depo. at pp. 44-47.)

where some of [the firefighters who signed the letter] had concerns or dealings with Captain

Poznako in the past would have concerns as to his integrity to a degree." (Lovejoy Depo. at p.

101.)

Prior to the test being administered, Firefighter Bagi drafted a letter to Chief French ("the

Letter"), in which he "predicted" that Firefighter Fetter would be selected for the TEMS Unit and

alleged bias in the selection process. (Bagi Depo at pp. 120, 131-32, 158, and 163-65.) The

Letter was drafted over a couple of weeks, with help from an attorney. (Bagi Depo. at pp. 144-

49.) On or about July 20, 2011 – twelve days prior to the TEMS Test being administered –

Firefighter Bagi printed the final version of the Letter. The Letter reads as follows:

> In the near future, a member of this Parma Fire Dept will be selected for the SWAT team.
> It is important that an issue regarding the selection process be brought to your attention.
>
> The previous testing procedure for SWAT selection have [sic] given many of us great
> pause. We were concerned previously that there was bias in the SWAT selection by
> Captain Poznako. Specifically, friends or close associates with Captain Pozanko [sic]
> seemed to be selected when they were universally believed not to be the best candidates
> through both objective and subjective criteria. However, they made it onto the SWAT
> team regardless.
>
> Captain Poznako has created a test for the SWAT team. This is a test made up by
> Captain Pozanko [sic] and is not a standardized test. Many of us have put significant
> hours into studying for this test only to find we were not selected. All of us fully
> understand there is a realistic high risk that we will not be the best performer on the test
> and will not be accepted onto the SWAT team. That is acceptable to all of us.
>
> However, there has been discontent within your ranks as many are under the belief that
> Captain Poznako gave the answers, or at least identified the areas to specifically study, to
> his friends and close associates so they could perform well on the test. This is horribly
> improper and demoralizing for us.
>
> This letter is being written in advance of the next test. Captain Poznako is a close friend
> of FF Fetter. Enclosed you will find a picture of them together at FF Fetter's daughter's
> graduation party. They openly acknowledge to be friends- which is not in any way
> improper. FF Fetter is a good fireman and a likeable person. However, objectively he

-12-

only has five years experience with the Department.[9]  It is our belief that he will be selected onto the SWAT team.  Again, FF Fetter is a good person and a good fireman. What FF Fetter does not understand is that his credibility within the ranks of the Parma Fire Dept. will be depreciated significantly amongst us when he is selected due to the bias of Captain Poznako.

These SWAT positions are important to all of us.  It is a way to both enjoy and advance our careers.  The selection of SWAT team members should be handled in a controlled manner not subject to personal whims.  If a less qualified person is selected for a SWAT position due to improper selection (such as giving answers in advance), there becomes a complete lack of interest in any of us putting forth the effort to become better fireman/paramedics.  Many of us have had to make a tough decision on whether to even apply for, much less study for significant hours, for a test where the outcome is predetermined.  The motivation to excel in this department is diminishing due to such improper bias at the Captain's level.

Again, this letter is being written in advance of the selection of the SWAT team member. You will find this letter has been sealed continually since it was mailed and it was sent on the postmarked date.  While all of us hope we are wrong, the fact that you have opened this letter and had to read it has shown that our prediction of the future has come to fruition.

We ask for your intervention to stop such conduct in the future.  All of us want to perform well for you and our community.  Being able to do the bets job possible starts with having leaders we can trust and rely on for their judgment.  As you can tell by this letter, it is commonly believed that Captain Poznako considers his personal interests above the interests of the whole Department and the Community.  However we have complete confidence you can remedy the situation.

We fully appreciate your time and attention to this matter.

(Letter dated July 20, 2011, Exhibit A to Defendant's Motion for Summary Judgment.)  Attached

to the final version of the Letter was a photograph of Captain Poznako and Firefighters Fetter,

Frantz, Brad Flynn and their wives at Firefighter Fetter's daughter's graduation party.  (Id.;

French Depo. at pp. 59-61.)  Firefighter Bagi copied the photo from a Facebook page belonging

to Firefighter Fetter or his wife.  (Bagi Depo. at p. 520.)

---

[9]

     Firefighter Bagi testified that his reference to Firefighter Fetter having only 5 years of service was a "typo" and that he actually believed Firefighter Fetter to have 3 or 4 years of service.  (Bagi Depo. at pp. 178-82.)

-13-

**1.      Firefighter Bagi's Knowledge Regarding the 2011 TEMS Test.**

Firefighter Bagi testified during deposition that prior to writing the Letter, the only information he had regarding the 2011 TEMS Test was his email correspondence from Captain Poznako with general testing information and the study materials given to him by Firefighter Fetter.  (Bagi Depo. at pp. 123-24.)  Firefighter Bagi did not know or find out how the test was being administered; was not aware that Firefighter Whelan wrote the written exam; and, did not have any information regarding who graded the separate parts of the 2011 TEMS Test.  (Bagi Depo. at p. 193.)

Firefighter Bagi testified he considered "table talk" of other Parma Firefighters before writing the Letter – including whether Firefighter Mike Frantz would be involved in the testing process, whether there would be an interview component, suspicions regarding why the vacancy wasn't filled sooner, and, his erroneous belief that the minimum required years of service was reduced when in fact it had been increased from 2-3 years –  but that no one implied anything improper occurred nor did Firefighter Bagi investigate further. (Bagi Depo. at pp. 134-36.)  He testified that he assumed that because he never received a response from Captain Poznako explaining who would grade the 2011 TEMS Test, that Captain Poznako would be doing so. (Bagi Depo. at p. 135.)  During his deposition, Firefighter Bagi stated his assumptions regarding how the 2011 TEMS TEST would be administered were based on what he knew of the 2004 TEMS Test.  (Bagi Depo. at pp. 142-44.)  He testified that the only basis for his "belief" that Captain Poznako "gave answers" to Firefighter Fetter was the fact that Firefighter Fetter was selected for the TEMS Unit.  (Bagi Depo. at pp. 198-99.)

**2.      Signatures.**

Firefighter Bagi kept the Letter – which he drafted before the Test was even administered

-14-

– in his truck.  He testified that he would ask other Firefighters to sign the Letter when "table talk" arose regarding the TEMS Unit.  (Bagi Depo. at pp. 164-65.)  Between July 20, 2011 and August 1, 2011, Firefighter Bagi obtained the signatures of six other Firefighters, including Plaintiff Firefighter Vojtush.[10]  Two Firefighters refused.  Plaintiffs assert that all signatories signed in good faith, based on a "common belief of Captain Poznako that came from their personal observations of his demeanor, past conduct, the past test in 2004, and the confusion of the years of service needed to be eligible for the TEMS unit;" "[b]ecause that there was a concern that Captain Poznako would influence the test;" and, that "the  Firefighters who signed Plaintiff Bagi's letter perceived a need to raise questions about the Captain and the manner in which the test was administered."  (Opposition Brief at pp. 8-9.)[11]  Plaintiffs state that they, and the other Firefighters signed the Letter because they wanted the 2011 TEMS Test to be administered in a fair manner.  (Opposition Brief at p. 6.)  However, as discussed in more detail below, instead of delivering the Letter before 2011 TEMS Test was administered, he held on to the Letter until after the Test results were known.

---

[10]

      There are over 100 Firefighters in the City of Parma Fire Department.  Firefighter Bagi asked 8 Firefighters to sign the letter – 6 agreed and 2 refused.  (Bagi Depo. at p. 206; French Depo. at p. 54.)

[11]

      Although Firefighter Bagi cites the Deposition testimony of Firefighter Mike Kinney in support of the proposition that Captain Poznako was not trusted based on the manner in which he administered the 2004 TEMS Test, Kinney stated he had no independent knowledge regarding how the 2004 TEMS Test was conducted; did not study for or take the 2004 Test; was not involved in and had no knowledge of the TEMS Unit team; and, had only heard rumors.  (Kinney Depo. at pp. 43 and 65-66.)  Likewise, Firefighter Christopher Tibbitts stated it was "common knowledge" that Captain Poznako "changed the answers on certain questions" in 2004 so that certain Firefighters would pass but, aside from rumor, he could not recall specific Firefighters who shared this information other than Firefighter Bagi.  (Tibbitts Depo.) at pp. 15-16.)

All those who signed, including Firefighter Bagi, did so at the Firehouse, either while on duty or just getting off duty. (Bagi Depo. at pp. 170-71; Deposition of Dan Gaudino ("Gaudino Depo.") at pp. 116-17; Kinney Depo. at p. 67; Knecht Depo. at pp. 64–66; Kolar Depo. at pp. 55-56; and, Tibbitts Depo. at pp. 44-45.) Firefighter Bagi told those signing the general content of the Letter and they testified that they signed the Letter because they thought Firefighter Bagi was taking the test and wanted to support him if he was the high scorer and was not selected. (Gaudino Depo. at pp. 38-40 and 85-86; Kinney Depo. at pp. 13-15, 15-76, 100-01 and 104; Knecht Depo. at pp. 68-71 and 81-83; Kolar Depo. at pp. 21-23.) Four of the signatories admit they did not read the Letter or only read part of it and most testified that the third-page photo was not part of the Letter when Firefighter Bagi had them sign. (Summary of Non-Plaintiff Signatories' Testimony, Exhibit X to Defendant's Motion for Summary Judgment; Gaudino Depo. at pp. 37-38, 48 and 89; Kinney Depo. at pp. 14-15, 75 and 79-85; Tibbetts Depo. at p. 45; Deposition of Gary Vojtush ("Vojtush Depo.") at p. 174.)

Plaintiff Firefighter Vojtush, one of the six signatories, did not read the Letter prior to signing. Firefighter Vojtush had not signed up to take the 2011 TEMS Test; did not have any knowledge regarding how the 2011 test would be administered; and, the only information he had about either the 2004 or 2011 TEMS Tests was through rumors and hearsay. (Vojtush Depo. at pp. 75-127.) Firefighter Vojtush testified that he did not have any knowledge that Captain Poznako gave answers or identified areas to study to his friends; he did not know of anyone selected for the 2004 TEMS Unit that was not qualified; he did not know what types of tests were used in 2004 or 2011; he was unaware of any rule that required 5 years of service to take the 2011 TEMS Test; and, stated if Firefighter Fetter received the highest score he should have been appointed. (Vojtush Depo. at pp. 74, 146-60, 203 and 382.) Firefighter Bagi called Firefighter

Vojtush "out of the blue" to tell him he was going to write a letter to the Fire Chief in order to "[look] into the process and [try] to take away any personal biases or anything like that from the process." (Vojtush at pp. 114-117 and 135.)   A couple of weeks thereafter, Firefighter Vojtush received a call from and later met Firefighter Bagi at Station 3 where Firefighter Bagi was on duty and he signed the Letter.  (Vojtush at pp. 174-77.)   Firefighter Vojtush testified he never inquired further regarding the allegations set forth in the Letter.  (Vojtush Depo. at p. 382.)

None of the Firefighters who signed the Letter, including Firefighters Bagi and Vojtush, had any evidence or information whatsoever that Captain Poznako "gave the answers or at least identified the areas to specifically study" to Firefighter Fetter or any other candidate, nor did they testify they believed Firefighter Fetter was unqualified.   (Knecht Depo. at pp. 68-69 and 79; Kolar Depo. at pp. 46 and 48; Gaudino Depo. at pp. 94-95; Tibbetts Depo. at pp. 46-50.)  In fact, most expected Fetter to perform well on the exam. (French Depo. at p. 50; Lovejoy Depo. at p. 179; Kolar Depo. at p. 61; Gaudino Depo. at p. 131; Kinney Depo. at pp. 30, 77, and 80-81; and, Tibbetts Depo. at pp. 23 and 50.)[12]

Of the six Firefighters who signed the Letter, each stated during deposition that they either had an issue with Captain Poznako in the past; disliked Captain Poznako; or, were only signing the Letter to support Firefighter Bagi if he took the exam and the highest scorer was not appointed.  (French Depo. at pp. 101-105 and 135-36; Gaudino Depo. at pp. 128-31; Kinney

---

[12]

In his deposition, Assistant Chief Ryan stated, "Firefighter Fetter was – in my opinion, would be considered one of our – probably our best medic.  He's a smart guy.  He's an instructor.  He's been involved in EMS for years prior to being on the fire department. . . .  He's a smart guy.  I would expect him to score – just like he just scored in the top three in the lieutenant's exam."  (Ryan Depo. at p. 114.)  Chief French testified, "I know that almost anybody on the department could have predicted Ricky Fetter would score highly on an EMS test.  His whole life is wrapped around EMS.  Anything EMS, he's going to do very well at."  (French Depo. at p. 50.)

Depo. at pp. 15 and 63; Knecht Depo. at pp. 48-49 and 65; Kolar Depo. at pp. 21-24; Lovejoy

Depo. at pp. 214-15; Tibbitts Depo. at p. 47; Vojtush Depo. at pp. 92-106.)  Firefighter Gaudino

testified he believes Firefighter Bagi asked him to sign the Letter because of Gaudino's prior

conflicts with Captain Poznako.  (Gaudino Depo. at pp. 84-85, 102-09, 112-13; 115-16 and 126-

27.)  Some of those who signed felt they were misled by Firefighter Bagi; believed they were

signing to support Firefighter Bagi; and, thought the Letter would only go to the Fire Chief in the

event Firefighter Bagi received the highest score but was not appointed to the TEMS Unit.

(Gaudino Depo. at pp. 114-15 and 139-40; Knecht Depo. at pp. 68-71; Kolar Depo. at pp. 21-24;

55-56; Lovejoy Depo. at p. 206.)

After obtaining the additional signatures, Firefighter Bagi sealed the Letter in an envelope

and mailed it to himself.  (Complaint at Paragraph 22.)  Firefighter Bagi testified that if

Firefighter Fetter was not selected for the TEMS Unit, he planned to throw the Letter away.

(Bagi Depo. at p. 176.)

### 3.    Delivery of the Letter.

Firefighter Bagi "held onto the letter until his predictions came true after the test, and

then he delivered it."  (Opposition Brief at p. 2; Bagi Depo. at pp. 131-32, 158. 163-65; Bagi

Declaration at Paragraphs 5 and 6.)  On Saturday, October 15, 2011, Firefighter Bagi took the

sealed Letter to Union Vice President Marty Cooper and asked Cooper to give it to Union

President Lovejoy to deliver it to Chief French.  (Bagi Depo. at pp. 207-08; Lovejoy Depo. at p.

37.)  On October 17, 2011, Firefighter Bagi took a copy of the Letter to City of Parma Human

Resources Director, Elayne Siegfried, including a cover letter in which Firefighter Bagi stated

"members of the Parma Fire Department and myself are aware of actions taken by Captain

Poznako that have a strong appearance of impropriety."  (Letter dated October 17, 2011, Exhibit

Y to Defendant's Motion for Summary Judgment; Bagi Declaration at Paragraph 6; Ryan Depo. at pp. 65-66; Kolar Depo. at pp. 13-14.)  Plaintiffs assert that Firefighter Bagi had a right and obligation under the City's Human Resources Policy to take the issue to the City's Human Resources Department and his superiors.  (Bagi Declaration at Paragraphs 6 and 7.)  Plaintiffs note that the cover letter to the Human Resources Director stressed, "that [Bagi] would be subject to retribution because of the contents of the letter to the Chief."  (Opposition Brief at p. 9.)[13]

Union Vice President Cooper gave Union President Lovejoy the sealed envelope on or about Tuesday, October 18, 2011.  Lovejoy was uncomfortable with delivering the Letter without knowing the content and he opened and read the Letter.  (Bagi Depo. at pp. 207-08; Lovejoy Depo. at pp. 15-17 and 113-14.)  Upon reading the Letter, Lovejoy believed it to be "an accusatory letter in regards to the testing process for the TEMS unit" and "hoped that they had

---

[13]

The City of Parma ethics policy includes provisions regarding reporting fraudulent acts or violations of law, and Plaintiffs argue that Firefighter Bagi had a right and obligation to take the issue to the City's Human Resource Director in addition to his superior – Chief French.  (Lovejoy Depo. at pp 112 and 115; Bagi Declaration at ¶ 6.)  Section 5.1(D)(1) of the Parma Ethics Policy provides:

D.    REPORTING VIOLATIONS

1.    An employee with a reasonable belief that another individual is committing a fraudulent act or violating a local, state, federal statute or the City's ethical standards bears a responsibility to bring the matter to the attention of the HR Director or Law Director.

a.    Employees reporting such conduct must be prepared to document their observations in writing including persons involved; dates, times and places the violations occurred; the ordinance or regulation violated; etc.

The policy further provides that if someone brings a violation to the human resources department in good faith – that individual would not be adversely affected. (Ethics Policy at Section D(1)(b)).

-19-

proof." (Lovejoy Depo. at p. 18.)  Lovejoy called Firefighter Bagi and asked if he had any proof of the allegations therein, to which Firefighter Bagi responded that he had predicted Firefighter Fetter would be selected.  (Lovejoy Depo. at pp. 18-19.)  Lovejoy told Firefighter Bagi that he would not submit the Letter to the Fire Chief without proof or information to substantiate the claims; warned him to be careful about what he is alleging if he did not have a "substantial basis;" told him he should talk to the Chief; and, recommended he take a different course of action.  (Id. at pp. 21, 43-44 and 209-10.)  Lovejoy believed the Letter accused Captain Poznako of cheating and was inaccurate.  (Lovejoy Depo. at pp. 45, 183 and 197-98.)

When Union President Lovejoy refused to deliver the Letter to Chief French, Firefighter Bagi told Lovejoy he needed the Letter back.  (Lovejoy Depo. at p. 21.)  Firefighter Bagi asked Lovejoy to give the Letter to the Fire Chief's secretary, Mary Kay, and he would pick it up. (Bagi Declaration at Paragraph 5; Lovejoy Depo. at pp. 21-22.)  Lovejoy left the Letter with Mary Kay as requested.  (Id.)  Firefighter Bagi then called Mary Kay and asked her to give the Letter to Chief French.  (Bagi Depo. at p. 555.)

Because Union President Lovejoy had originally given the Letter to Mary Kay to hold for Firefighter Bagi, when Mary Kay delivered the Letter to Chief French, she told Chief French it was from was from Lovejoy.  (French at p. 48.)  When he read the Letter, Chief French believed that the Letter accused Captain Poznako and Firefighter Fetter of cheating.  (French Depo. at pp. 52, 55 and 142.)  Chief French immediately called Lovejoy who clarified that the Letter was not from the Union.  (French Depo. at pp. 56-59.)  Chief French testified he was irritated when he read the Letter for various reasons, including that it suggested there may be corruption with the TEMS Test; wished the issue had not been put in writing due to his concern that Plaintiffs' speech would go public; and, "did not want any negative light portrayed on the Parma Fire in the

-20-

public."  (French Depo. at pp. 49-50, 80 and 145.)  Chief French also felt that regardless of the City's Ethics Policy, the Letter should not have been given to the City's Human Resource Department because it was not within the Fire Department's Chain of Command.  (French Depo. at pp. 140-41.)  Chief French testified that the Letter disrupted the Fire Department, a fact that is disputed by Plaintiffs.  (French Depo. at pp. 89 and 107-09; Opposition Brief at p. 13.)

>       **D.**      **Investigation.**

Human Resource Director Siegfried, Parma Safety Director Greg Baeppler, Fire Chief French and Assistant Fire Chief Dennis Ryan held a meeting and it was agreed that the Fire Department would investigate the allegations made against Captain Poznako and Firefighter Fetter.  (Affidavit of Greg Baeppler ("Baeppler Affidavit"), Exhibit AA to Defendant's Motion for Summary Judgment; French Depo. at pp. 52 and 80.)  Assistant Fire Chief Ryan typically conducts investigations for the Fire Department and recommends discipline and was assigned to conduct the investigation.  (French Depo. at p. 88.)  Interviews with each of the signatories, as well as Captain Poznako and Firefighters Fetter and Iacoboni, were conducted and ultimately no evidence was revealed to support any of the allegations raised in the Letter.  In a letter dated January 3, 2012 to Chief French, Assistant Chief Ryan explained that his investigation uncovered no wrongdoing; that none of those interviewed provided any evidence to support the allegations set forth in the Letter; and, that he believed the allegations to be false and based on rumor rather than any factual evidence. (Letter dated January 3, 2012, Exhibit BB to Defendant's Motion for Summary Judgment.)

Finding no evidence to support any of the allegations set forth in the Letter, the investigation turned to the actions of the signatories in creating and signing the Letter.  (Baeppler Affidavit at Paragraph 7.)  Assistant Chief Ryan interviewed 17 individuals, including the

Firefighters who created and administered the 2011 TEMS Test, and re-interviewed each of the signatories after reading them their "Garrity" rights.  (French Depo. at p. 180.)  Assistant Chief Ryan concluded that the signatories knowingly brought false allegations against Captain Poznako and Firefighter Fetter and, by doing so, brought discredit upon the Fire Department.  Assistant Chief Ryan concluded that because there was no attempt to verify the allegations in the Letter prior to signing, the signatories violated the Department's policy concerning use of the chain of command and recommended charges against the signatories.

Chief French reviewed Assistant Chief Ryan's recommendations and, based upon the seriousness of the allegations and Plaintiff Firefighter Vojtush's prior discipline for an unrelated matter, recommended to the Safety Director that both Plaintiffs be terminated.  (French Charges against Firefighter Vojtush dated August 12, 2012 and French Charges against Firefighter Bagi dated August 14, 2012, Exhibits CC and DD to Defendant's Motion for Summary Judgment; French Depo. at pp. 30-31, 88 and 111.)  Chief French believed that Firefighter Bagi "preplanned a personal attack" against Captain Poznako.  (French Depo. at p. 189.)

### E.  Discipline.

The Safety Director imposed a 2 tour[14] suspension (approximately 48 hours) on the non-plaintiff signatories;[15] Firefighter Vojtush received a 13 tour suspension based on his involvement with the Letter and because he had a prior 10 tour suspension; and, Firefighter Bagi

---

[14]  The Court will refer to the Firefighters' suspensions as "tour" suspensions.  The Parties use both "tour" and "shift" interchangeably in explaining the discipline imposed.

[15]  Firefighters Gaudino and Kolar later apologized to Captain Poznako and Firefighter Fetter for the Letter.  (Gaudino Depo. at pp. 120-21; Kolar Depo. at p. 71.)

received a 34 tour suspension based on his creation of the Letter, solicitation of signatures and insubordination in refusing to produce the Letter when requested. (Letters to Firefighters Bagi and Vojtush dated October 3, 2012, Exhibits EE and FF to Defendant's Motion for Summary Judgment; Baeppler Affidavit at Paragraph 9.)

Firefighters Bagi and Vojtush, represented by the Union, grieved their discipline through arbitration pursuant to the grievance process set forth in the applicable Collective Bargaining Agreement. (Lovejoy Depo. at p. 216.) The arbitrators in both cases concluded there was no information to suggest any improprieties with the 2011 TEMS Test. (Firefighter Bagi's Arbitration Decision dated February 4, 2014 and Firefighter Vojtush's Arbitration Decision dated February 21, 2014, Exhibits GG and HH to Defendant's Motion for Summary Judgment.) The arbitrators concluded that the accusations leveled against Captain Poznako and Firefighter Fetter were false. Finding the discipline to be too severe, Firefighter Bagi's suspension was reduced to an 8 tour suspension and Firefighter Vojtush's suspension was reduced to a 2 tour suspension. (Id.) Neither appealed. (Bagi Depo. at p. 252.)

Once arbitration was complete, Union President Lovejoy recommended the Union file reverse charges against Firefighter Bagi pursuant to the International Constitution for bringing "discredit or false charges against other members" and "engaging in conduct detrimental to the best interest of the association." (Lovejoy Depo. at pp. 217 and 223.) President Lovejoy informed Firefighter Bagi (during a phone call that Firefighter Bagi recorded without Lovejoy's knowledge) that the Union was considering charges. The Union never charged Firefighter Bagi because the only remedy would have been to remove Firefighter Bagi from the Union. (Lovejoy Depo. at pp. 217-18.)

**F.     The Effect of the Letter.**

The City of Parma asserts that the effect the Letter had on the Parma Fire Department was "huge" and that the Letter caused morale issues and friction between the Firefighters and the Union, as well as discrediting the Firefighters and Fire Department as a whole. (French Depo. at pp. 107-10l, 110 and 189-90; Gaudino Depo. at pp. 140-45; Knecht Depo. at p. 83; Ryan Depo. at pp. 116 and 149-50.)  The City of Parma states that Firefighter Fetter was devastated; his family was affected by the accusations; and, that Firefighter Fetter offered to resign from the TEMS Unit because of the Letter.  (Fetter Depo. at pp. 63-67; Whelan Depo. at pp. 75-76, 82-86, 102-03 and 150-52.)  To the contrary, Plaintiffs cite deposition testimony from several Firefighters who stated there was no disruption and that the Firefighters continued to perform their jobs as usual after the Letter was submitted.  (Opposition Brief at p. 13, citing Gaudino Depo. at p. 28; Kinney Depo. at pp. 42 and 94-95; Kolar Depo. at p. 16; and Tibbetts Depo. at p. 57.)

**II.     Procedural Background.**

Plaintiffs filed their Complaint in this case on March 13, 2014, alleging Plaintiff Firefighters Bagi and Vojtush were retaliated against for exercising their right to freedom of speech, in violation of the First Amendment and 42 U.S.C. § 1983 (Count I) and that Plaintiff Firefighter Vojtush was retaliated against for taking medical leave, in violation of the Family Medical Leave Act ("FMLA") (Count II).  On July 27, 2015, Plaintiff Vojtush voluntarily dismissed his FMLA claim, leaving only the First Amendment retaliation claim for disposition.

The City of Parma filed its Motion for Summary Judgment on March 11, 2016.  (Docket #54.)  The City argues that the statements made in the Letter are not protected under the First Amendment because the statements were made with reckless indifference to their falsity.

Further, the City argues that the statements were made by Plaintiffs in their official capacities; that Plaintiffs were not speaking as citizens for First Amendment purposes; and, that the Constitution does not insulate their communications from employer discipline. Finally, the City asserts that even if Plaintiffs could overcome the foregoing, they have failed to otherwise support their claim for retaliation, arguing that Plaintiffs' speech is not a matter of public concern and that the City's interest in managing the Fire Department outweighs Plaintiffs' First Amendment interests.

Plaintiffs filed their Opposition Brief on May 5, 2016. (Docket #72.) Plaintiffs argue that their speech was a matter of public concern and was based on their observations of what they believed was an unethical procedure for choosing members for the TEMS Unit. Plaintiffs assert that choosing the best possible candidates for the TEMS Unit is a matter of public interest and of concern to the community – not simply an employee grievance or part of their official duties – and that they had no personal or self-interest related to their job in the outcome of the test. Further, Plaintiffs argue that their speech was not made with intentional or reckless disregard for the truth and, therefore, is protected under the First Amendment. Finally, Plaintiffs argue that there is no evidence that the Letter meaningfully interfered with the operation of the Fire Department; the work of the Firefighters; created disharmony; or, destroyed trust.

The City filed its Reply Memorandum on May 24, 2016. (Docket #77.) Citing direct testimony from Firefighters Bagi and Vojtush – and breaking down the statements set forth in the Letter – the City argues that Plaintiffs did indeed act with reckless indifference and, therefore, that their speech is not entitled to First Amendment protection. The City argues that Plaintiffs have failed to demonstrate their speech was a matter of public concern, and that they spoke only as employees motivated by self-interest. The City reiterates its argument that even if the speech

was a matter of public concern, the subsequent dissension caused by the Letter – the statements within which it argues were false – required the City to take action to deal with the disruption it argues was caused.

Plaintiffs filed a Response to the City's Reply Brief on June 7, 2016, and the City filed an additional Reply Brief on June 14, 2016, each correcting what they believe to be inaccuracies and misleading statements made by one another.  (Docket #s 82 and 86.)[16]

### III.    Summary Judgment Standard.

Summary judgment is appropriate when the court is satisfied "that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  The burden of showing the absence of any such "genuine dispute" rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine [dispute] of material fact.

*Celotex v. Catrett*, 477 U.S. 317, 323 (1986) (citing FED. R. CIV. P. 56(c)).  As a general matter, the district judge considering a motion for summary judgment is to examine "[o]nly disputes over facts that might affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" only if its resolution will affect the outcome of the lawsuit.  *Id.*  The court will not consider non-material facts, nor will it weigh material evidence to determine the truth of the matter. *Id.* at 249.  Determination of whether a dispute is

---

[16]

Also pending is the Motion to Strike Affidavit of Anthony Dalesio filed by Plaintiffs.  (Docket #81.)  The Motion is hereby denied as moot as the Affidavit has only been considered to the extent admissible and does not impact disposition of the pending Motion for Summary Judgment.

"genuine" requires consideration of the applicable evidentiary standards. The court will view the summary judgment motion in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In sum, proper summary judgment analysis entails "the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual [disputes] that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

The nonmoving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be resolved by a jury." *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. Ky. 1995). FED. R. CIV. P. 56(e) states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

The Federal Rules identify the penalty for the lack of such a response by the nonmoving party as an automatic grant of summary judgment, where otherwise appropriate. *Id.*

## IV. Discussion.

The Court has thoroughly and exhaustively reviewed the claims raised by Plaintiffs; the City of Parma's Motion for Summary Judgment and the briefing responsive thereto; and, all supporting documentation, including a detailed analysis of the deposition testimony and evidentiary materials submitted by both Parties. The Court has reviewed each deposition in its entirety, carefully considering all relevant and admissible evidence.

"'[T]he First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern.'" *Westmoreland v. Sutherland*, 662 F.3d

-27-

714, 718-19 (6th Cir. Ohio 2011) (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006); citing *Connick v. Myers*, 461 U.S. 138, 143 (1983)).  To establish that speech is constitutionally protected, a public employee must show that he was speaking as a private citizen, rather than pursuant to his official duties; that his speech involved a matter of public concern; and, if so, that his interest as a citizen in commenting on the matter outweighed "'the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.'" *Garcetti*, 547 U.S. at 417 (quoting *Pickering v. Bd. of Educ. of Twp. High Sch. Dist.* 205, 391 U.S. 563, 568, (1968)).   Decisions of the Sixth Circuit imply that "'where an employee intentionally or recklessly makes false statements, the speech is not a matter of public concern and, as such, the *Pickering* balancing test is inapplicable.'" *Westmoreland*, 662 F.3d 714, 720 (quoting *Westmoreland v. Sutherland*, 718 F. Supp. 2d 884, 893 (N.D. Ohio 2010)).

Although, as noted by Plaintiffs, a public employee is not required to prove the truth of his or her speech in order to secure the protections of the First Amendment, statements made with intentional *or reckless* disregard for their falsity fall outside the realm of protected speech. *Westmoreland*, 662 F.3d 714 at 721.  The burden is on the City to establish Plaintiffs knew or were recklessly indifferent to the fact that their speech was false.  *Chappel v. Montgomery Cnty. Fire Prot.*, 131 F.3d 564, 576 (6th Cir. Ohio 1997).  In this case, the City has indeed demonstrated that Plaintiffs' speech – the Letter – was written and signed off on with reckless indifference to whether the statements contained therein were false and, as such, is not a mater of public concern and not protected employee speech under the First Amendment.  This lawsuit, like the allegations made by Plaintiffs in the Letter, is wholly without merit.

Firefighter Bagi drafted, and Firefighters Bagi and Vojtush both signed the Letter, despite the fact that there was no evidence whatsoever of any wrongdoing in connection with the 2004 or

2011 TEMS Tests; no evidence of bias; and, no evidence that Firefighter Fetter was not qualified or that his selection was based on something other than merit.  Contrary to the allegations set forth in the Letter, Captain Poznako did not create, administer or grade the 2011 TEMS Test and Plaintiffs had absolutely no evidence that Captain Poznako gave answers or identified specific areas to study to his friends and close associates so they could perform well on the test, as is written in the Letter.  There was no evidence that Captain Poznako influenced the process or selection in any way, and no evidence that the outcome was predetermined.

Plaintiffs' Letter included inaccurate and unverified statements regarding the years of service requirement in an attempt to discredit Firefighter Fetter's qualifications and/or suggest that the rules were modified to benefit Firefighter Fetter, despite the fact that the correct information was readily available and had been emailed to all Firefighters, including Plaintiffs. Further, contrary to the statements included in the Letter, neither Firefighter Bagi, nor any of the other signatories, took the 2011 TEMS Test and none of them put "significant hours into studying to find [they] were not selected."  In fact, Firefighter Bagi skipped the informational meeting during which the 2011 TEMS Test and its requirements were discussed; never picked up the information Captain Poznako put aside for him after the meeting even though he had emailed Captain Poznako and specifically requested it; and, instead, asked Firefighter Fetter (who did attend the meeting) for a copy of his own study materials, which Firefighter Fetter provided. Then, rather than preparing for and taking the 2011 TEMS Test, Firefighter Bagi drafted the baseless and accusatory Letter and convinced six Firefighters, most of whom admit they did not read the Letter and were misled regarding its purpose and contents, to sign.

None of the signatories, aside from Firefighter Bagi, believed Firefighter Fetter to be "not the best candidate" for the TEMS Unit.  Even if Firefighter Bagi and Captain Poznako had a

difficult relationship – and even if other Firefighters within the Parma Fire Department believed Captain Poznako to have a volatile personality or to be otherwise disagreeable – there was no evidence of bias, favoritism or improprieties of any kind in connection with either the 2004 or 2011 Test. Firefighter Fetter was the high scorer on the 2011 TEMS Test and selected for the TEMS Unit, not because of bias or because Plaintiffs predicted he would be based on assumptions for which Plaintiffs had no support, but because he received the highest score and was the most qualified candidate.

The false accusations leveled against Captain Poznako and Firefighter Fetter caused an appreciable disruption within the Fire Department and Union. The City's thorough and complete investigation of the serious allegations made by Plaintiffs, which were proven to be false, forced both the City and Union to expend significant resources, including countless hours and an unknown amount of taxpayer dollars. To write and publish a letter accusing Captain Poznako and Firefighter Fetter of cheating – despite having no evidence at all of any wrongdoing and with complete disregard for the impact the false accusations would have on their careers, reputations and lives – is indefensible.

All of the evidence before the Court demonstrates that the City, the Fire Department, and those who investigated the allegations, as well as those who were accused of wrongdoing, acted with honesty and professionalism, yet Captain Poznako and Firefighter Fetter will never be able erase the fact that their character and integrity were questioned both within the ranks of the Fire Department and publicly. While the Court's findings in this case should leave no doubt in anyone's mind that the allegations made by Plaintiffs were completely false, it is impossible to reverse the unjustified and unwarranted scrutiny that Firefighter Fetter and his family were wrongfully forced to endure. By all accounts, Firefighter Fetter is an exemplary

-30-

Firefighter/Paramedic – highly qualified and rightfully appointed to the TEMS Unit based on merit – who has through his hard work and dedication earned the respect of his peers.

**V.      Conclusion.**

Given their reckless indifference to the fact that there was no evidence to support the allegations set forth in the Letter, Plaintiffs' speech falls outside the realm of employee speech protected under the First Amendment and no reasonable jury could find otherwise.  Accordingly, the City of Parma is entitled to summary judgment as a matter of law.

The Motion for Summary Judgment filed by Defendants (Docket #54) is hereby GRANTED.  Defendant, the City of Parma, is entitled to summary judgment as to Plaintiffs' First Amendment retaliation claim, Count I of the Complaint.

Count II of the Complaint was previously voluntarily dismissed by Plaintiffs.

All pending motions are hereby denied as moot.

This case is hereby TERMINATED.   All costs to be borne by Plaintiffs.

IT IS SO ORDERED.

s/Donald C. Nugent
DONALD C. NUGENT
United States District Judge

DATED:   August 19, 2016

-31-